## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **GORDON H. HAYES, JR.,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | **NO.  4:18-cv-12238-TSH** |
| **v.** | ) | |
| | ) | |
| **JOHN O. MIRICK and MIRICK,** | ) | |
| **O'CONNELL, DEMALLIE & LOUGEE,** | ) | |
| **LLP,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS (Docket No. 36)

### SEPTEMBER 9, 2021

Gordon H. Hayes, Jr. ("Plaintiff") brings this suit against Attorney John O. Mirick

("Mirick") and, through vicarious liability, the law firm of Mirick, O'Connell, DeMallie & Lougee,

LLP ("Mirick O'Connell") (collectively, "Defendants").  (Fed. Compl., Docket No. 2).  The

remaining claims are deceit and misrepresentation (Count III), civil conspiracy (Count IV), unjust

enrichment (Count VIII), and vicarious liability (Count IX).

Plaintiff alleges that while acting without legal authorization as Plaintiff's *de facto*

conservator, Mirick engaged in deceit and misrepresentation with Plaintiff's court-appointed

conservator Tracy Craig ("Craig") regarding the location of his pet dog, improperly prolonged the

conservatorship, and improperly withdrew funds from Plaintiff's estate as compensation for

conservatorship fees and services.  (Fed. Compl. at ¶¶ 51-52, 60, 77-80).  Defendants move to

dismiss all remaining claims as barred by the doctrine of claim preclusion, based on the prior proceedings in Massachusetts Probate and Family Court.

Defendants' motion to dismiss is ***granted*** as to Count VIII but ***denied*** as to Counts III, IV, and IX.  In accordance with § 4 of this Order, the parties shall submit limited supplemental briefing so that the Court can ascertain whether Plaintiff's remaining claims meet the statutory amount in controversy threshold necessary for the Court to have subject matter jurisdiction.

## **Factual Background**

*The Conservatorship*

On November 18, 2008, the Plymouth County Probate and Family Court issued a Permanent Decree of Conservatorship and appointed Craig, a partner in Mirick O'Connell's Trust and Estates practice, to serve as Plaintiff's conservator.  (Probate Court Findings of Fact ¶ 3, Docket No. 29-2 [hereinafter Prob. Dec.]).  The conservatorship endured for approximately nine years.  (¶ 27).

On October 21, 2015, Plaintiff filed a complaint in Worcester Superior Court against Craig for conversion, alleging that Craig stole Plaintiff's dog, Charlie, and seeking Charlie's return. (State Ct. Compl. at 2, Docket No. 15-1).  On November 5, 2015, Craig filed a petition to resign. (Prob. Dec. ¶ 76).  On July 6, 2016, Plaintiff petitioned to terminate the conservatorship.  (¶ 14).  On August 17, 2017, the Plymouth County Probate and Family Court granted Plaintiff's petition.  (¶ 27).

*The Probate Court Fiduciary Session Trial*

As part of Craig's responsibilities as Plaintiff's conservator, she was required by state law to file yearly accounts with the Probate Court detailing the value of the petitioner's estate.[1]  To

---

[1] "An executor, administrator, guardian or conservator, or a trustee required by law to give bond to

prevent abuse of the conservatorship system, Massachusetts law provides for supplemental proceedings if the petitioner or a guardian ad litem files an objection to any accounting.  Mass. Supp. R. Prob. & Fam. Ct. 60, 72.  Plaintiff filed objections to all but one of Craig's accounts.  (¶¶ 5-35).  On May 23, May 28, May 29, May 30, and June 13, 2019, the Fiduciary Litigation Session of the Probate Court held a bench trial on: Craig's Petition for Allowance of the First and Final Account of the Temporary Conservator, filed November 5, 2015; Craig's Petition for Allowance of the First Through Sixth Accounts, filed November 5, 2015; Craig's Petition for Allowance of the Seventh Account, filed April 20, 2016; Craig's Petition for Allowance of the Eighth Account, filed May 26, 2017; Craig's Petition/or Order a/Complete Settlement, filed October 4, 2017; Plaintiff's Objection to the Petition for Allowance of the First and Final Account, filed December 14, 2015; Plaintiffs Objection to the Petition for Allowance of the First Through Sixth Accounts, filed December 14, 2015; Plaintiffs Objection to the Petition/or Allowance of the Seventh Account, filed May 18, 2016; Plaintiffs Objection to the Petition for Allowance of the Eighth Account, filed September 21, 2017; and Plaintiffs Objection to the Petition for Complete Settlement, filed November 14, 2017.[2] The Probate Court issued its 36-page decision on October 2, 2019, and issued an amended judgment and attorneys' fees award on January 9, 2020. (Docket Nos. 29-1, 29-3).

The Probate Court's October 2, 2019 detailed findings of fact narrate the tumultuous breakdown in communications between Craig and Plaintiff in 2015. In short, the Probate Court

---

a judge of probate, shall render an account relative to the estate in his hands at least once a year and at such other times as shall be required by the court, until his trust is fulfilled; but eh court may at his request excuse him from rendering an account in any year, if satisfied that it is not necessary or expedient that it should be rendered."  M.G.L. c. 206 §1.

[2] *In re: Conservatorship of Gordon H, Hayes, Jr., Plymouth County Family and Probate Court,* Docket No. PL08P1529PM (Plymouth Cty. Prob. Ct. Oct. 2, 2019).

found that from her appointment in 2008 until April 2015 Craig communicated regularly with Plaintiff (¶ 115) and responsibly managed his considerable debt and mental health challenges, reaching beneficial settlements with various creditors (¶ 116 ), arranging his petition for divorce (¶ 112-13), obtaining disability benefits (¶ 116), and allocating his living expenses (¶ 116).  However, the relationship soured when Plaintiff began abusing alcohol, opening credit cards without permission, and demanding increasing  amounts of  money from Craig beyond his customary allowance.  (¶¶ 38-41).  Eventually, the relationship deteriorated to the point where Craig testified she felt threatened by Plaintiff and became concerned he might die without alcohol abuse treatment.  (¶ 42).  She emailed Plaintiff on April 22, 2015, demanding that he stop calling and emailing her until he agreed to seek treatment.  (¶ 43).  On April 27, 2015, Plaintiff's brother contacted Craig asking about Charlie—Craig assured him that Charlie was being cared for. (¶ 45).  On April 30, 2015, Craig wrote an email to Plaintiff's wife and children and medical providers proposing that Mirick O'Connell "informally transfer" the conservatorship to Craig's colleague, Paul Carey, so that Plaintiff would not resent Craig for "making decisions about his day to day money." (¶ 47).

Plaintiff soon grew frustrated with Carey, who, in consultation with Craig, continued to limit his living allowance.  (¶ 48).  Craig took possession of Charlie when Plaintiff was admitted to an inpatient rehabilitation program in Arizona on May 20, 2015.  (¶ 52).  Craig testified that Charlie was neglected, poorly trained, and aggressive, though the Probate Court found no evidence to reject or corroborate this; Craig assured Plaintiff that Charlie was doing well and she took $225.75 from Plaintiff's account for food, toys, treats, and a rabies shot.  (¶¶ 54-57).   Plaintiff threatened to sue Craig for referring his inquiries to Attorney Carey, and on June 23, 2015, Mirick, Mirick O'Connell's general counsel, sent Plaintiff a letter advising him that Craig was "prepared to

step down" as conservator and directing Plaintiff to contact Mirick moving forward. (¶ 58). On July 22, 2015, Mirick emailed Plaintiff to request a meeting and assured Plaintiff that Craig had custody of Charlie, although he knew that Craig had given Charlie away to another family. (¶ 66). Plaintiff told Mirick that Craig was blocking his emails, an allegation which the Probate Court found credible. (¶ 69).

After Plaintiff's discharge, he met with Mirick and Craig on August 7, 2015, but they refused to discuss Charlie. (¶ 71). In a phone call between Mirick, the rescue group which had Charlie, and Plaintiff's attorney, Mirick announced that Craig wanted a home visit to be conducted before Charlie was returned to Plaintiff. (¶ 73). In October 2015, Plaintiff sued Craig for conversion and Charlie's return.[3] (State Ct. Compl., Docket No. 15-1). In her responsive pleading, Craig admitted to Plaintiff that she had given away Charlie in July 2015 and that she had misled him about that fact. (¶ 75).

For the next two years, Plaintiff filed various objections to Craig's accounts and the parties continued to litigate and negotiate Craig's removal as conservator, until at one point a doctor reported that Plaintiff no longer needed a conservator, and the conservatorship was terminated in August 2017. (¶¶ 76-84). During this period, Mirick emailed Plaintiff's counsel that Craig would stipulate to terminate the conservatorship if he would release his claims and objections to the accounts, a conditional offer which the Probate Court deemed improper. (¶ 82). The Court also found that "Craig made no real effort to have her petition [to resign] heard," even though Craig should have "promptly" moved the Court to take it up and appoint a successor once the breakdown between Craig and Plaintiff occurred. (*Id.* at 34-35).

---

[3] This case was dismissed by joint stipulation on April 23, 2015.

Upon examination of the record and after hearing testimony, the Probate Court found that: Craig breached her fiduciary duty to Plaintiff by allowing Carey, then Mirick, to act as Plaintiff's *de facto* conservators; that there was no urgent reason for Craig to rehome Charlie; that Craig and Mirick repeatedly misrepresented Charlie's status and whereabouts to Plaintiff; that Craig should have petitioned the Court to appoint a successor or allow her to resign when the relationship broke down, rather than allow the impasse to fester; and that Craig improperly continued to charge Plaintiff conservatorship fees despite evidence as early as June 2016 that he no longer needed a conservator. (¶¶ 100, 101, 103, 116-21, 135-36).  The Probate Court surcharged $106,291.20 of Mirick O'Connell's fees and $6,270 for the cost of Plaintiff's efforts to locate Charlie (which included an award for fees for the Superior Court action).  In essence, the Court concluded "[t]he manner in which the conservatorship was managed is of concern" given "the amount of fees incurred, the quality of services provided given the relationship between [Craig] and [Plaintiff], and the duration of the conservatorship." *(Id.* at 33, 34).  On January 9, 2020, the Probate Court awarded Plaintiff $28,000 in attorney's fees and noted it had also awarded Plaintiff $10,000 in a prior amended judgment for the cost of the guardian ad litem who analyzed the disputed accounts at trial.  (Docket No. 29-3).

*The Federal Suit*

While Plaintiff's objections to the conservator's accounts were pending and about ten months before the Probate Court Trial, Plaintiff, a resident of Rhode Island, filed this federal suit on October 26, 2018, invoking the Court's diversity jurisdiction.  I dismissed Plaintiff's breach of fiduciary duty (Count I), negligence (Count II), defamation (Count V), invasion of privacy (Count VI), and intentional infliction of emotional distress (Count VII) on May 13, 2019.  (Docket No. 20).  At the parties' request, the Court stayed the case from July 3, 2019 through April 5, 2021 due

to the Probate Court action. (Docket Nos. 24, 31).

The crux of Plaintiff's remaining claims are that between August 2015 and the termination of the conservatorship in August 2017, Mirick and Mirick O'Connell lied to Plaintiff about giving his dog away, artificially extended the conservatorship, and misappropriated his assets in the guise of carrying out legitimate conservatorship duties. Count III (deceit and misrepresentation) alleges that Mirick repeatedly lied about the status and disposition of Charlie until it was too late for Plaintiff to be reunited with his pet. Count IV (civil conspiracy) alleges that Mirick conspired with Craig to commit the misconduct in Count III. Count VIII (unjust enrichment) is not limited to Charlie: it alleges that Mirick's entire course of conduct from August 2015 to August 2017 was *ultra vires* and so Plaintiff is entitled to recover the $101,335.31 in compensation collected by Mirick and Mirick O'Connell while they were acting as his *de facto* conservator. Count IX (vicarious liability) states that Mirick O'Connell is vicariously liable for all the tortious acts and omissions committed by Mirick.

## Legal Standard

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 559  (2007). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs favor. *Langadinos* v. *Am. Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir. 2000). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."

7

*Ocasio-Hernandez v. Fortuno-Burset,* 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but it has not 'show[n]'-that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S.

662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### Discussion

"Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered  in a state

court is entitled to the same preclusive effect in federal court as it would be given within the state

in which it was rendered." *In re Sonus Networks, Inc, Shareholder Derivative Litigation,* 499 F.3d

47, 56 (1st Cir. 2007) *(citing Migra* v. *Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81

(1984)). Therefore, Massachusetts law determines whether the Probate Court's decision has

preclusive effect in this suit.  *Id.*

Claim preclusion "makes a valid, final judgment conclusive on the parties and their privies,

and prevents relitigation of all matters that were or should have been adjudicated in the action."

*Kucharski* v. *Tribeca Lending Corp.,* 620 F. Supp. 2d 147, 150 (D. Mass. 2009) (quoting *O'Neill v.*

*City Manager,* 428 Mass. 257, 259, 700 N.E.2d 530, 532 (1998)). The doctrine prevents claim

splitting and aims to preclude parties who had the opportunity to fully litigate the matter in the first

proceeding to try their luck a second time. *Carpenter* v. *Carpenter,* 73 Mass.App. Ct. 732, 738,

901 N.E.2d 694, 699 (2009).

Claim preclusion requires: "(1) the identity or privity of the parties to the present and prior

actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Daluz v.*

*Department of Correction,* 434 Mass. 40, 45 (2001) (quoting *Franklin* v. *North Weymouth Coop.*

*Bank,* 283 Mass. 275, 280 (1933)).  The burden of establishing these elements falls on the party

asserting the defense. *Carpenter,* 73 Mass. App. Ct. at 738, 901 N.E.2d at 699.  If these three

requirements are met, claim preclusion is a valid defense to a later suit. *Reppert v. Marvin Lumber & Cedar Co.,* 359 F. 3d 53, 56 (1st Cir. 2004) (citing *United States* v. *Cunan,* 156 F. 3d 110, 114 (1st Cir. 1998)).

Defendants argue that Plaintiff's claims should be dismissed because they were fully litigated in the Probate Court trial. (Docket  No. 36).  Plaintiff contends that the motion to dismiss should be denied because there is a lack of  privity between the defendants in the instant proceeding and the matters in *In re Conservatorship of Gordon H. Hayes, Jr.;* a lack of identity between the two proceedings; and that the Probate Court did not result in a final judgment on the merits of Plaintiff's pending claims against Mirick. (Docket No. 39).  Because Massachusetts Probate Courts are courts of limited equity jurisdiction and Plaintiff could not obtain the tort damages he seeks in federal court before the Probate Court, I find that a rare exception to claim splitting applies which precludes the application of claim preclusion to Counts III and IV, but not Count VIII.

1. <u>Privity of Parties</u>

First, a successful defense of claim preclusion requires the identity or privity of the parties to the present and prior actions. *Daluz*, 434 Mass. at 45.  Under Massachusetts law, claim preclusion may be invoked by a person who was not a party to the earlier proceeding, only if that person's interest was represented by a party to the prior action.  *Cavic v. America's Servicing Co.*, 806 F. Supp. 2d 288, 292 (D. Mass. 2011).  Defendants argue that though Mirick and Mirick O'Connell were not directly named in the Probate Court litigation, they were quasi parties, and therefore, privity still exists.  Defendants assert that they are quasi parties because Mirick's involvement in Plaintiff's conservatorship was discussed at length in the Probate Court Decision and because Mirick O'Connell was surcharged for Mirick's actions, which stemmed from the same

series of transactions alleged by Plaintiff in the matter that is now before this Court.

Defendants rely on the Superior Court decision in *Weiss v. Grolman,* where the court found that privity requires "a very close relationship bordering on a complete identity of interest." 30 Mass. L. Rptr. at *3 (quoting *Mongeau v. Boutelle,* 10 Mass. App. Ct. 246, 250 (1980)).  In *Weiss,* the court held that the privity requirement was satisfied because although defendant was not a party to the earlier case, he was in privity with his partner and the law firm, who were named as defendants in that case.  *Id*.  Further, the court held that under M.G.L. ch. 108A § 15, the partners were vicariously liable for each other's conduct with respect to claims arising from their practice, and that their interests were identical in this regard.  *Id.*

Plaintiff argues that the instant proceeding is distinguished from *Weiss* by the fact that Judge Moriarty found that the Probate Court matter concerned Plaintiff's dispute  with Craig in her capacity as his conservator, not Craig's partnership with Defendants. *(See* Prob. Dec. ¶ 141). Rather, Plaintiff argues that the instant proceeding involves claims against Mirick for his independent tortious acts and omissions, which fall outside the scope of Craig's work as his conservator.

Although the Probate Court acknowledged that Plaintiff was "unlike a regular law firm client," it also acknowledged Craig's partnership with both Defendants. *(See* ¶ 141).  Specifically, the Probate Court addressed Craig's relationship with Mirick O'Connell through the firm's fees and surcharges for her services as conservator to Plaintiff. *(See id.* at ¶¶ 122-140).  It also found that Craig worked closely with Mirick, as she allowed him to act as a "point person" so Craig did not have to communicate with Plaintiff but could stay connected with the case, to act in her stead as Plaintiff's conservator, and to further her lies about Charlie. *(See id.* at ¶¶ 119, 121).  In the Probate Court proceeding, the claims against Craig implicated the

Defendants, as they became entangled in the conservatorship dispute. *See Weiss* at \*3. Because Mirick and Mirick O'Connell's interests were represented in the earlier proceeding, this Court should find that the relationship between Craig and the Defendants is sufficient to constitute privity.

In the alternative, Plaintiff argues that even if Mirick were deemed to be in privity with Craig, claim preclusion would still be inapplicable because (1) the two proceedings do not involve the same identity of issues; (2) there has been no final judgment on the merits of Plaintiff's claims against Mirick; and (3) different available remedies were available in each proceeding. (Docket No. 39 at 6).

2. <u>Identity of the Causes of Action</u>

A successful claim preclusion defense further requires that the asserted causes of action are sufficiently identical or related. *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 17 (1st Cir. 2010). Massachusetts courts use a transactional approach to weigh relatedness, and look to whether the causes of action arise out of a common nucleus of operative facts. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass 'n*, 142 F.3d 26, 38 (1st Cir. 1998). The Court makes this determination by looking at factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." *In re Iannochino*, 242 F. 3d 36, 46 (1st Cir. 2001) (quoting RESTATEMENT (SECOND) OF JUDGMENTS§ 24 (1982)).

Plaintiff concedes that the operative facts are sufficiently identical, but asserts that there is no identity of issues because the available remedies in this Court and the state Probate Court were different. Presented with this highly unusual fact pattern, the Court concurs.

Under longstanding Massachusetts jurisprudence barring claim splitting, the entry of a

"valid and final judgment extinguishes . . . all  rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction,  or series of connected transactions, out of which the action arose." *Boyd v. Jamaica Plain Co-op. Bank,* 386 N.E.2d  775,  781-82 (Mass. App. Ct. 1979) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 61(1).  In accordance with that principle, claim preclusion applies "even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies." *Tapalian* v. *Town of Seekonk,* 188 F. Supp. 2d. 136, 139 (D. Mass. 2002) (quoting *Heacock* v. *Heacock,* 402 Mass 21, 23 (1988)).

It may be formidable, but the bar against claim splitting is not universal.  It does not apply where the plaintiff "was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or seek that remedy or form of relief." RSMT 2d. JUDG § 26(1)(c)(Exceptions to the General Rule Concerning Splitting).  As the Restatement explains, because the claim splitting rule "is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law ... it is unfair to preclude a Plaintiff from bringing a second action... " *Id.*

The U.S. District Court of Maine applied this so-called judicial competence exception to the general prohibition against claim-splitting in a very similar scenario. In *Siegemund* v. *Shapland,* the plaintiff, who had previously sought unsuccessfully to remove her elderly mother's

guardians in Massachusetts and Maine probate courts, later sued the guardians for tortious conduct in federal court in Maine after her mother's death. 247 F.Supp.2d 1 (D.Me. 2003).  Judge Hornby denied the guardians' motion to dismiss for claim preclusion, holding that because Siegemund was unable to obtain the relief she sought in federal court before the Massachusetts probate court, claim preclusion was unavailable as an affirmative defense.[4]  *Id.* at 3-5.

Massachusetts probate courts are courts of limited jurisdiction. They are courts of equity, which cannot hear tort actions for damages. *See, e.g., Heacock* v. *Heacock,* 402 Mass. 21, 520 N.E.2d 151, 153 (Mass.1988) ("[T]he Probate Court does not have jurisdiction to hear tort actions and award damages.").  Therefore, Plaintiff could not have brought his deceit and misrepresentation (Count III) or his civil conspiracy (Count IV) tort claims against Mirick or Mirick O'Connell in the prior proceeding.  Indeed, as the Probate Court Decision suggests in its Conclusions of Law, the only remedy available to him was repayment for excessive expenses: his recovery was limited to what Defendants overcharged him for conservatorship fees.  If he prevails in federal court he can obtain money damages for harm separate from repayment of excessive conservatorship fees.  Given that Plaintiff had no control over the limited jurisdiction of the Probate Court which tried his objections to Craig's accounting, it would be unfair to preclude him from holding her liable in federal court, where he can recover tort damages.

---

[4] As Judge Hornby acknowledged, there is some ambiguity about whether Probate Courts can actually hear tort claims and award non-equitable damages. M.G.L. 205 § 31 suggests that lawsuits in probate court upon a bond and authorize the recovery of "all damages caused by ... neglect or maladministration" but there is no evidence of a probate court issuing tort damages.  At the motion to dismiss hearing, Defendants argued the Probate Court's $28,000 attorneys' fee award and $6,270 award for Plaintiff's expenses to locate Charlie demonstrate that the Probate Court had broad discretion to craft remedies, including money damages, so that Plaintiff was not deprived of a remedy in state court.  However, attorney's fees are readily distinguishable from the tort damages which Plaintiff seeks, and the funds awarded for Charlie were surcharges from the Plaintiff's conservatorship fees (Prob. Dec. ¶ 135), and thus are an equitable rather than legal remedy.

13

However, the same rationale does not apply to Plaintiff's unjust enrichment claim (Count VIII). To prevail on an unjust enrichment claim, the plaintiff must prove: (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit and (3) that acceptance or retention by the defendant of the benefit under the circumstances would be inequitable. *Stevens* v. *Thacker,* 550 F.Supp.2d 161, 165 (D. Mass. 2008).  The Probate Court made detailed findings about Mirick and Mirick O'Connell's mishandling of Plaintiff's conservatorship, and ordered them to pay back the exact amount of conservatorship fees that it would be unfair to allow them to keep.  But Count VIII insists that Defendants have no right to "any monies invoiced between August  2015 and August 17, 2017" and seeks to have this court second-guess the Probate Court's prior ruling and award Plaintiff a greater share of his conservatorship fees than what the Probate Court thought was equitable. The Full Faith and Credit Clause at 28 U.S.C. § 1738 expressly forbids this Court from such action.

3.  <u>Prior Final Judgment on the Merits</u>

Finally, the party invoking claim preclusion must establish that the claim was actually and necessarily decided in a prior action or that there was a full and fair opportunity to do so that was not taken. *See Heacock*, 402 Mass. at 24; *Massachusetts Prop. Ins. Underwriting Ass'n v. Norrington*, 395 Mass. 751, 753 (1985); *Ratner v. Rockwood Sprinkler Co.*, 340 Mass. 773, 775 (1960). For claim preclusion purposes, a final judgment on the merits ends the litigation, leaving "nothing for the court to do but execute the judgment." *AVX Corp. v. Cabot Corp.,* 424 F. 3d 28, 32 ( lst Cir. 2005) (quoting *Acevedo-Villalobos v. Hernandez*, 22 F. 3d 384, 388 (1st Cir. 1994)). When evaluating whether a judge's ruling ended the litigation, the Court is "bound to defer to a reasonable interpretation of the judgment's meaning and effect elucidated by the judicial officer who authored it." *Witty v. Dukakis*, 3 F.3d 517, 520 (1st Cir. 1993).

14

Defendants argue that the Probate Court decision was a final judgment on the merits because it was issued after a five-day bench trial and resulted in Craig, Mirick, and Mirick O'Connell disgorging a portion of the fees they had charged Plaintiff for conservatorship services, and reimbursing Plaintiff for costs associated with locating Charlie, including suing his conservator to divulge the dog's whereabouts. Plaintiff contends that there was no final judgment because the Probate Court found Mirick had committed misconduct but could not assess damages against him, making the Probate Court proceeding a limited one. (Docket No. 39 at 5).

However, Plaintiff cites no case law finding that because a proceeding is a limited one, it cannot result in a final judgment on the merits. Rather, courts have even found the decisions of administrative agencies acting in a judicial capacity to constitute final judgments on the merits. *See e.g., Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 7 (1st Cir. 1992); *Pagan Hernandez v. Univ. of P.R.,* 7 P.R. Offic. Trans 795, 804, 107 D.P.R. 720 (1978). Further, Probate Courts judgments can constitute final judgments on the merits. *See e.g., Marcello v. Harris,* 2007 WL 3274325, at *22 (D.R.I. Nov. 2, 2007) (finding that the Probate Court's decision to be final upon the expiration of the period allowed for filing the appeal). "If the plaintiffs mean to argue that, as a general proposition, judgments of the Probate Court cannot serve as the basis for res judicata in a civil court of general jurisdiction, they are wrong..." *Siegemund v. Shapland,* 2002 U.S. Dist. LEXIS 18160 at *19-20 (D. Me. Sept. 26, 2002); *see Borman* v. *Borman,* 378 Mass. 775,393 N.E.2d 847, 850-51 (Mass. 1979) (holding, in an appeal from the Probate Court, that "if a decree is to be executed presently, so that an appeal would be futile unless the decree could be vacated by the prompt entry of an appeal... the decree is a final one.").

I find that the Probate Court's Decision is a final judgment on the merits. Claim preclusion is appropriate only if a plaintiff has had an "opportunity to litigate the matter fully in the first

lawsuit." *Foster v. Evans,* 384 Mass. 687,696 n. 10 (1981). Based on the Probate Court Decision, Plaintiff had the opportunity to litigate the matter fully. Thus, the Probate Court's Decision constitutes a final judgment on the merits.

4. <u>Amount in Controversy</u>

Because federal courts are courts of limited jurisdiction, they have "an obligation  to enquire into [their] own subject matter jurisdiction." *McCulloch* v. *Velez,* 364 F.3d 1, 5 (1st Cir. 2004). The Court assumes that Plaintiff's initial  damages request  of $140,838.96  accounts  for the value of the  now-dismissed  claims.  (Docket No. 2-1).  Now that I have dismissed the unjust enrichment claim due to claim preclusion, the only remaining claims against Mirick (and by extension of Count IX's vicarious liability theory, against Mirick O'Connell) are for Mirick's misrepresentations and conspiracy to deprive Plaintiff of his pet dog, Charlie.  At the hearing on this motion, Plaintiff argued that Counts III and IV are not limited to damages arising from the Plaintiff's loss of Charlie's companionship, but encompass all of Mirick and Mirick O'Connell's alleged misconduct during the final two years of the conservatorship.  The Court has reviewed the Complaint, but finds little support for this interpretation.  Whereas Count VIII covers "[a]ll acts and/or omissions by Mr. Mirick since August 2015," and alleges that every action taken during that period was *ultra vires*, Count III and IV are limited to "approximately four months" and references nothing but Mirick's misrepresentations about Charlie.  (*Compare* Fed. Ct. Compl. ¶¶ 77, 81 *with* ¶¶ 51-57, 60-61).

Though the Court hesitates to put a price on man's best friend, it must confirm that it has the subject matter jurisdiction to adjudicate the remaining claims. Plaintiff must demonstrate that the amount in controversy requirement exceeds $75,000 by the preponderance of the evidence. *See*

16

28 U.S.C. § 1332; *Bank One, Texas, N.A.* v. *Montie,* 964 F.2d 48, 50 (1st Cir. 1992). Therefore, by Monday September 20, 2021, Plaintiff shall submit supplemental briefing no longer than ten pages on whether his remaining claims exceed the $75,000 threshold.  Defendants shall have until Monday October 3, 2021 to issue any responsive briefing.

### Conclusion

The Court will not consider whether issue preclusion applies, as Defendants' motion was limited to the broader claim preclusion doctrine.  Based upon the foregoing reasons, Defendants' motion to dismiss is ***granted*** at to Count VIII but ***denied*** as to Counts III, IV, and IX.  In accordance with § 4 of this Order, the parties shall submit the limited supplemental briefing so that the Court may ascertain whether Plaintiff's remaining claims exceed the statutory amount in controversy requirement.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

17